# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>FREDRICK BURNS,<br><br>            Defendant. | 8:22CR272<br><br>FINDINGS AND RECOMMENDATION |

      This matter is before the Court on the Motion to Suppress (Filing No. 35) filed by Defendant, Fredrick Burns. Defendant seeks to suppress evidence obtained from the search of a residence pursuant to a search warrant, asserting the warrant was not supported by probable cause. Defendant filed a brief (Filing No. 36) in support of the motion, and the government filed a brief (Filing No. 42) in opposition. The government also filed an Index of Evidence containing Exhibit 1, which is the search warrant and supporting application and affidavit challenged by Defendant in this motion. (Filing No. 43-1). Defendant initially requested an evidentiary hearing, but following a status conference held with counsel for Defendant on November 17, 2023, Defendant withdrew his request for an evidentiary hearing.[1] Because Defendant only moves to suppress evidence obtained from the execution of a search warrant allegedly issued without probable cause, the Court's review will be limited to whether the four corners of the warrant affidavit and application established probable cause. See *United States v. Saddler*, 19 F.4th 1035, 1039 (8th Cir. 2021) ("[O]nly that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.") (quoting *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020)). Accordingly, the matter is now fully submitted. For the following reasons, the undersigned magistrate judge recommends that the motion be denied.

## BACKGROUND

      On July 7, 2022, a Nebraska county court judge signed a search warrant for a residence at 3820 S 24th Street in Omaha, Nebraska, based upon an application and affidavit submitted by

---

[1] In Defendant's motion, he also indicates one of his statements contained in a police report "potential[ly]" is inadmissible. (Filing No. 35 at ¶ 11). During the status call with counsel, Defense counsel clarified that the sole basis for seeking suppression of any statements would be as fruit of the warrant issued without probable cause.

Omaha Police Department Detective Christopher Perna ("Officer Perna"). ([Filing No. 43-1](Filing No. 43-1)). The affidavit set forth the following information:

> Affiant Officer was contacted by a reliable confidential informant hereafter referred to as C/I. The C/I stated that he/she knew of a party named, Aliyah FREEMONT, who is known to actively sell imitation oxycodone (Fentanyl) pills in the Omaha area. The C/I described FREEMONT as being a light skinned or mixed-race black female, approximately 5'2", approximately 20 years of age.
>
> Within 48 hours of 23 June 2022, during the daytime hours, Affiant Officer met with the C/I. The C/I stated he/she had set up a fentanyl pill transaction with FREEMONT. The C/I stated that he/she would be buying the blue "M30" imitation oxycodone pills. The C/I stated he/she was instructed by FREEMONT to pick he up in the area of S 36th and Orchard St. The C/I stated that FREEMONT said that once he/she picked FREMONT they were going to 3820 S 24th St apartment #2 to meet a white male named "Dro", who will supply FREEMONT the imitation oxycodone pills. Affiant Officer knew of this location and of "Dro" from a previous interview. Affiant Officer interviewed Xavier RODRIGUEZ after he was arrested for a warrant and drug possession on 13 June 2022. RODRIGUEZ stated that he was buying imitation oxycodone pills from a "Dro" at 3820 S 24th St, apartment #2. RODRIGUEZ described Dro as a white male in his late 20"s. RODRIGUEZ stated that apartment #2 was located on the upstairs floor on the left. RODRIGUEZ stated that Dro lives alone and is always armed with a handgun.
>
> Affiant Officer met with the C/I at a meet spot. Prior to meeting with the C/I surveillance units went to the area of 3820 S 24th St and put a camera in the hallway outside of 3824 S 24th St, apartment #2. The C/I and C/I's vehicle were searched and no items of evidence were located. The C/I was given money from the Omaha Police Buy fund to purchase the pills from FREEMONT. The C/I was given a recording device in order to record the transaction. Surveillance Officers observed the C/I go to the area of S 36th and Orchard St. Surveillance officers observed the C/I pick up a light skinned black female in the area of S 36th and Orchard St. Surveillance units then followed the C/I to the address of 3820 S 24th St. The unknown black female was observed exiting the C/I's vehicle and enter the door located to the right of the front door of 3820 S 24th St, this doorway leads to the stairway up to apartment #2. Approximately 10 minutes later the unknown black female was observed exiting 3820 S 24th St. and re-enters the C/I's vehicle. Surveillance officers then followed the C/I's vehicle to S 36th and Orchard St where the unknown female exits. Surveillance officers then followed the C/I back to the meet location.
>
> Affiant Officer interviewed the C/I at the meet location. The C/I stated that he/she went to S 36th and Orchard St and picked up the person they know as Aliyah FREEMONT. The C/I stated that FREMONT needed to go to 3820 S 24th St apartment #2, to get the pills. The C/I stated that he/she dropped off FREEMONT

2

at 3820 S 24th St and watched her enter a side door off the front porch. The C/I stated that after a few minutes FREEMONT returned with the blue imitation oxycodone pills. The C/I stated he/she gave FREEMONT money from the Omaha Police Buy Fund and in return received blue imitation oxycodone pills in a plastic baggie. The C/I stated they then dropped FREMONT back off in the area of S 36th and Orchard St.

Affiant Officer took the blue pills to the Omaha Police Department Property/Evidence room. There were 10 pills, blue in color and imprinted with an M on one side and 30 on the opposite side. Affiant Officer knows through training and experience that the blue pills are imitation oxycodone pills and contain fentanyl.

Within 48 hours of 7 July 2022, during the daytime hours, Affiant Officer met with the C/I. The C/I stated he/she had set up a fentanyl pill transaction with FREEMONT. The C/I stated that he/she would be buying the blue "M30" imitation oxycodone pills. The C/I stated he/she was instructed by FREEMONT to come to 3820 S 24th St. FREEMONT stated that she was at "Dro's" apartment and would be able to get them pills right from "Dro". Affiant Officer knew of this location and of "Dro" from a previous transaction and interview.

Affiant Officer met with the C/I at a meet spot. Prior to meeting with the C/I surveillance units went to the area of 3820 S 24th St and observed FREEMONT sitting on the front porch of 3820 S 24th St. The C/I and CI's vehicle were searched and no items of evidence were located. The C/I was given money from the Omaha Police Buy fund to purchase the pills from FREEMONT. The C/I was given a recording device in order to record the transaction. Surveillance Officers observed the C/I go to 3820 S 24th St Surveillance officers observed FREEMONT leave the front porch of 3820 S 24th St and get into the C/I's vehicle. FREEMONT is observed exiting the C/I's vehicle, go back to 3820 S 24th St and go up the side stairs to apartment #2. Approximately 4 minutes later FREEMONT was observed exiting of 3820 S 24th St and re-enters the C/I's vehicle. After a couple of minutes FREEMONT is observed exiting the C/I's vehicle and is seen walking south on S 24th St. Surveillance officers then followed the C/I back to the meet location.

Affiant Officer interviewed the C/I at the meet location. The C/I stated that he/she went to 3820 S 24th St and met with the person they know as Aliyah FREEMONT. The C/I stated that he/she gave FREEMONT the money from the Omaha Police Buy Fund, to get the pills. FREEMONT stated that she was going to get the pills from "Dro" who was in his apartment at 3820 S 24th St, apartment #2. The C/I said FREEMONT went inside 3820 S 24th St and after a few minutes came back to the C/I's vehicle. The C/I stated that FREEMONT gave him/her 10 blue pills that were then turned over to Affiant Officer. The C/I stated they then left FREEMONT at 3820 S 24th St.

3

Affiant Officer took the blue pills to the Omaha Police Department Property/Evidence room. There were 10 pills, blue in color and imprinted with an M on one side and 30 on the opposite side. Affiant Officer knows through training and experience that the blue pills are imitation oxycodone pills and contain fentanyl.

Affiant Officer also knows that parties involved in the manufacture and/or distribution of illegal narcotics will coordinate sales via cellular telephones through phone calls, texting and even social media if the phone is so equipped. These parties will often times store contact information, photographs, schedules and even videos in these same phones, computers and electronic storage devices. Affiant Officer also knows that these parties will sometimes be in possession of weapons to protect their investments and have been known to keep detailed records of drug transactions and can be in possession of money that is profited from the sale of the illegal narcotics.

The C/I in the past had made controlled purchases of illegal narcotics under the direction of Affiant officer. These controlled purchases have tested positive for the narcotics he/she was purchasing. The C/I is familiar with illegal narcotics and how they are packaged and sold. The C/I is under no terms of parole, probation, or work release.

(Filing No. 43-1 at pp. 1-4).

Based upon the above information, the county court judge issued a no knock search warrant for apartment #2 at 3820 S 24th Street, Omaha, Nebraska. During execution of the search warrant, law enforcement seized methamphetamine, a number of pills marked "M30," over $4,500 in U.S. currency, and a handgun with magazine. (Filing No. 42 at p. 4). According to the parties' briefing, Defendant arrived at the apartment during the search and made certain statements to officers. (Filing No. 42 at p. 4).

On December 13, 2022, the grand jury returned a two-count indictment against Defendant charging him with possession with intent to distribute methamphetamine and a fentanyl analogue, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and with knowing possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). (Filing No. 1). Defendant has now filed the instant motion to suppress evidence obtained as a result of the execution of the search warrant. Defendant asserts the warrant application and affidavit did not contain sufficient information to establish probable cause to believe a crime or evidence of a crime would be found at the apartment. Defendant further contends the warrant affidavit was so lacking

4

in indicia of probable cause that it was not objectively reasonable for officers to rely on the warrant in good faith. (Filing No. 36).

## ANALYSIS

"A supporting affidavit establishes probable cause to issue a search warrant if it 'sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched.'" *United States v. Lindsey*, 43 F.4th 843, 848 (8th Cir. 2022) (quoting *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017); see also *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019) ("Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "In addition to probable cause that contraband or evidence of a crime will be found, 'there must be evidence of a nexus between the contraband and the place to be searched.'" *United States v. Randle*, 39 F.4th 533, 536 (8th Cir. 2022) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016) (quoting *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999)). When relying on an affidavit to establish probable cause, "the probable cause determination must be based upon only that information which is found within the four corners of the affidavit." *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009). "Search warrant [a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002) (quotations and citations omitted). An issuing judge's determination of probable cause "should be paid great deference by reviewing courts." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010).

After review, the undersigned magistrate concludes the application and affidavit set forth sufficient facts to establish a fair probability that contraband or evidence of criminal activity, specifically, narcotics trafficking, would be found at apartment #2 at 3820 S. 24th Street. Defendant primarily contends probable cause did not support the warrant because law enforcement did not sufficiently confirm or establish the reliability of certain information contained in the affidavit. First, Defendant argues there was insufficient investigation or follow-up on statements

made by the arrestee, Xavier Rodriguez, and the dealer, Aliyah Freemont, that a white male in his 20s named "Dro" lived in the upstairs apartment #2 at 3820 S. 24th Street and was a source of narcotics. Defendant contends this information is insufficient or unreliable because law enforcement never found records confirming a white male in his 20s lived at that address, never confirmed the identify of "Dro," and never confirmed a past of narcotics dealing by anyone named "Dro." Second, Defendant challenges law enforcement's failure to confirm whether Fremont actually entered apartment #2 or interacted with anyone inside the apartment during either of the two controlled buys at 3820 S. 24th Street. Defendant also takes issue with the affidavit for mentioning that law enforcement placed a surveillance camera outside apartment #2, but then failing to mention anything that was captured by the camera.

Defendant's arguments primarily focus on what the affidavit lacked. However, a search warrant affidavit is "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Daigle*, 947 F.3d 1076, 1081 (8th Cir. 2020), *reh'g denied* (Mar. 10, 2020) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)). It is useful to recount all relevant information contained in the affidavit. The affidavit provided that Officer Perna was contacted by a confidential informant (CI) stating that Freemont, a light skinned or mixed-race black female, was known to be selling imitation oxycodone (Fentanyl) pills in the area. The affidavit included information to support the reliability of this CI, specifically, that Officer Perna had utilized this CI in the past to make controlled purchases of illegal narcotics that tested positive for the narcotics the CI was purchasing. Controlled buys under the direction of law enforcement establish a CI's reliability. See, e.g., *United States v. Neal*, 528 F.3d 1069, 1073-74 (8th Cir. 2008) (finding reliability of informant was supported by a single controlled buy from defendant). This reliable CI reported that Freemont stated she would get her imitation oxycodone pills from a white male named "Dro" at apartment #2 at 3820 S. 24th Street. Because the CI had demonstrated his/her reliability in the past through controlled buys, there is a permissible inference that this information from the CI was also reliable. See *United States v. Keys*, 721 F.3d 512 (8th Cir. 2013) ("If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable."); see also *United States v. Oliver*, 950 F.3d 556, 564 (8th Cir. 2020) ("An informant's track record of providing trustworthy information establishes reliability.").

6

Further, under the observation of surveillance officers, the CI conducted a controlled purchase of pills from Freemont.  During the controlled buy, surveillance officers observed the CI make contact with a light skinned black female; followed the CI and the unknown black female to 3820 S. 24th Street; watched the unknown black female head through a doorway that leads to the stairway up to apartment #2; and watched the unknown black female return to the CI's vehicle approximately ten minutes later.  At Officer Perna's prearranged meet location with the CI, the CI stated the unknown black female was Freemont, and produced 10 blue pills labeled M on one side and 30 on the opposite side in a plastic baggie that Freemont had sold the CI.  See, e.g., *United States v. Roberts*, 2019 WL 4648456 (E.D. Mo. 2019) (probable cause for search of property found when: reliable informant purchased narcotics from unwitting informant, unwitting informant entered property immediately prior to transaction, officer had prior tips to corroborate suspicion of narcotics at the property, and controlled purchase was made under surveillance by officers).

The CI's information regarding "Dro" selling imitation oxycodone pills from his apartment was also independently corroborated by another source.  Prior to and independent from the CI's information, Officer Perna had interviewed an individual named Xavier Rodriguez after he was arrested for drug possession.  During Rodriguez's interview with Officer Perna, Rodriguez stated he was buying imitation oxycodone pills from a white male in his late 20s named "Dro" at apartment #2 at 3820 S. 24th Street.  Rodriguez stated Dro lived alone and is always armed with a handgun. This information from a named individual providing identical details as the reliable CI's information regarding Dro's sale of imitation oxycodone from his apartment also tends to establish the reliability of the information.  See *United States v. Solomon*, 432 F.3d 824, 827-28 (8th Cir. 2005) (providing that known informants are generally more credible because they can be held accountable for false statements); *United States v. Knutson*, 967 F.3d 754, 759 (8th Cir. 2020) (concluding two known informants without an adequate track record of reliability "verified each other by independently providing highly-detailed, nearly-identical accounts.").

The deficiencies cited by Defendant—failure to investigate "Dro" and whether records establish a "Dro" lived at apartment #2 and failure to provide information as to what was captured by the surveillance camera outside apartment #2—does not negate or defeat the information that was present in the affidavit.  Freemont's sale of narcotics and her access to 3820 S. 24th Street immediately prior to both controlled buys was reported by a reliable CI and corroborated by surveilling officers.  Rodriguez's independent and prior identification of apartment #2 at 3820 S.

7

24th Street as a source of narcotics provided further corroboration and support. This information supports a finding that there was a fair probability that apartment #2 at 3820 S. 24th Street was a source of narcotics and that there was a reasonable, logical likelihood of finding useful evidence at the residence. See *Reed*, 921 F.3d at 757 ("Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"); *Colbert*, 828 F.3d at 726 ("The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence."); see also *United States v. Brackett*, 846 F.3d 987, 922 (8th Cir. 2017) (An issuing judge may "draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant.").

        Defendant further contends the search warrant affidavit was inadequate because it does not reflect that laboratory testing confirmed whether the pills obtained during the transaction between Freemont and the CI were in fact controlled substances. Defendant reasons that law enforcement had ample time to test the substances, but instead made conclusory and unsupported statements that the officer knew, based on "training and experience" that the pills contained controlled substances. However, issuing judges may rely on warrant applications that include opinions based on officers' training and experience. See, e.g., *United States v. Turner*, 953 F.3d 1017, 1020 (8th Cir. 2020) (probable cause was established when officer found, based on his training and experience, that drug traffickers often use rental cars to transport drugs and money). The affidavit provides that on two separate occasions, law enforcement set up a "fentanyl pill" transaction with Freemont and on both occasions, Freemont provided the informant with blue pills with "M" on one side and "30" on the other side. Officer Perna knew from "training and experience" that these kinds of pills were imitation oxycodone and contained fentanyl. This is further supported by the affidavit's statement that the pills were obtained through a reliable CI that had made controlled purchases of illegal narcotics in the past, and that the CI's past purchases tested positive for the narcotics he/she was purchasing. Although laboratory testing of the pills could have provided additional support for probable cause, it was not necessary based on the other reliable information contained in the affidavit.

        Viewing the totality of the circumstances, the undersigned magistrate judge finds the four corners of the warrant affidavit and application contained sufficient information establishing that there was a "fair probability that contraband or evidence of criminal activity" would be found at

apartment #2 at 3820 S. 24th Street. *See United States v. Wallace*, 550 F.3d 729, 733 (8th Cir. 2008) ("[O]nly a probability of criminal conduct need be shown in the affidavit."). Because the warrant was issued pursuant to a proper showing of probable cause, Defendant's motion to suppress should be denied.

Defendant further asserts that probable cause was so lacking that the *Leon* good faith exception does not apply. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 920 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (quoting *Leon*, 468 U.S. at 922 (1984)). Under *Leon*, evidence seized in reliance on a search warrant is not subject to suppression unless:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702-03 (8th Cir. 2017) (citing *Leon*, 468 U.S. at 923). Only if the officer knew or should have known that the search was unconstitutional under the Fourth Amendment should the evidence be suppressed. *See United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021), *reh'g denied* (May 19, 2021).

Defendant does not assert any of the above conditions apply in this case except for (3), that the warrant was "so lacking in indicia of probable cause" as to render belief in its existence entirely unreasonable. However, the undersigned magistrate judge finds that even if the warrant affidavit did not establish probable cause, the *Leon* good faith exception would apply. The affidavit contained information that a reliable informant conducted two controlled purchases of narcotics in which the seller the seller reported to the informant that her source was located in apartment #2 at 3820 S 24th Street; the seller entered 3820 S. 24th Street immediately prior to the sale; surveillance officers observed the seller enter 3820 S. 24th Street; the seller exited 3820 S. 24th Street, and

9

provided informant with pills which the officer knew from training and experience contained fentanyl. Additionally, prior to and independent from these controlled purchases, an arrestee provided law enforcement with a tip that an individual living in apartment #2 at 3820 S. 24th Street was a source of narcotics. Given this information, it was not "entirely unreasonable" for law enforcement to rely on the warrant to search that apartment for evidence related to ongoing narcotics sales.

Upon consideration,

**IT IS HEREBY RECOMMENDED** to Robert F. Rossiter, Jr., Chief United States District Court Judge, that Motion to Suppress (Filing No. 35) be denied.

Dated this 28th day of November, 2023.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

### ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.